FILED
2007 Mar-07 PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KENNON R. PATTERSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 05-B-0366-S |
| | ) |
| COMMUNITY BANCSHARES, INC., | ) |
| BENEFIT RESTORATION PLAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This case is presently pending before the court on plaintiff's Objections to the Magistrate Judge's Report and Recommendation. (Doc. 20.)[1] Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that plaintiff's objections are due to be overruled. The Magistrate Judge's Report and Recommendation will be accepted in part, rejected in part, and modified in part. Plaintiff's Motion for Summary Judgment, (doc. 11), is due to be granted in part and denied in part; defendant's Motion for Summary, (doc. 14), is due to be denied.

**I. STANDARD OF REVIEW**

**A. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The district court conducts a de novo review of the portions of the Magistrate Judge's Report and Recommendation to which plaintiff objects. Fed. R. Civ. P. 72(b). After review,

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

"[t]he district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id*.

## B.  SUMMARY JUDGMENT STANDARD

The Report and Recommendation considers the parties' cross-motions for summary judgment. Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor.

*See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  STATEMENT OF FACTS

Plaintiff does not object to the Magistrate Judge's finding that "[t]he material facts are not in dispute."  (*See* doc. 19 at 1; doc. 20.)  The Magistrate Judge found the evidence supported the following findings:

> The [p]laintiff, Kennon R. Patterson, served for almost 20 years as President, Chief Executive Officer, and Chairman of the Board of Directors (the "Board") of Community Bancshares, Inc., and was the founding Chairman of Community Bancshares, Inc.  The plaintiff began service in 1983 as President of the Bank of Blountsville.  Under his leadership, the bank grew from one branch and $34 million in assets to a regional bank with over 30 branches and over $750 million in assets.  Community Bancshares, Inc. purchased the Bank of Blountsville, as well as other banks, and the company also expanded into Tennessee which resulted in enormous growth.  The plaintiff also served as Chief Executive Officer and Chairman of the Board of Directors of Community Bank, an Alabama banking corporation, and Chairman of the Board of Directors of Community Bank, a Tennessee banking corporation, both of which are subsidiaries of Community Bancshares, Inc. (Community Bancshares, Inc., and its subsidiaries will be referred to hereinafter collectively as "Community.")
>
> The "top hat" plan (the Plan)[2] was designed to supplement Community's Revised Pension Plan for the purpose of providing deferred compensation for a select group of management or highly compensated

---

[2]The Community Bancshares, Inc., Benefit Restoration Plan is a "top hat" plan, which is "a plan [that] is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  *See* 29 U.S.C. § 1051(2); *see also Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

3

employees. Benefits are payable from assets that are available at the time the participant becomes eligible to receive benefit payments. On January 27, 2003, Community's Board of Directors terminated the plaintiff's employment and dismissed him from all company positions. The plaintiff had been eligible for benefits under the Plan. On June 16, 2003 and July 7, 2003, the plaintiff requested payment. On October 29, 2003, he was indicted on a number of counts related to schemes to use Community to fund extensive work on his personal residence and property. On October 30, 2003, the Board denied the requested "top hat" benefits. The reason given by the defendant for denying such benefits was the plaintiff's failure to report his bankruptcy to the Board and his release of mortgages held on collateral by Community. This reason was based on an amendment to the Plan, which stated:

> Notwithstanding any other provision of this Plan, a participant shall forfeit all benefits payable under this Plan, regardless of when such benefits accrue or have accrued, if the Board of Directors of Community Bancshares, Inc., or a committee thereof to which such authority is delegated, determines that the participant has (a) breached a fiduciary duty owed to Community Bancshares, Inc. or any direct or indirect subsidiary thereof (collectively, the "Company") or to any benefit plan maintained by the Company resulting in an injury to the Company or the plan, or (b) committed an act of dishonesty resulting directly or indirectly in gain to or personal enrichment of the participant at the expense of the Company.

This amendment, however, was adopted on October 23, 2003, after the plaintiff's termination and application for benefits. On September 2, 2004, the plaintiff was indicted on a superseding indictment. On March 10, 2005, the plaintiff was convicted of bank fraud, conspiracy, and other charges. On December 13, 2005, the plaintiff was sentenced to five years in prison and ordered to pay restitution to the defendant in the amount of $1,776,974.24.

(Doc. 19 at 1-3 [footnote added].)

The court notes that Community paid plaintiff's benefits under its Revised Pension Plan; the benefits at issue in this case are only those payable under Benefit Restoration Plan.

In the Report and Recommendation, the Magistrate Judge stated:

4

> At the time Community denied the plaintiff's request for benefits, it gave, as the basis for the denial, the October 23, 2003 amendment to the Plan. The amendment, however, appears not to be a sustainable basis to support the denial, and in its brief Community does not argue that it is. The facts of this case, however, give rise to legal principles that the court should apply in determining whether the plaintiff is entitled to "top-hat" benefits. Based on the law and reasoning set out in *Carson* [*v. Local 1588, International Longshoremen's Ass'n*, 769 F. Supp. 141 (S.D.N.Y. 1991)], it is hereby concluded that this court should apply applicable principles of equity to the facts and determine whether the plaintiff's benefits should be completely or partially forfeited. It is further concluded that Community is entitled at least to the remedy of traditional set-off law. [Footnote] The court should conduct an evidentiary hearing for this purpose.
>
> [Footnote] Except for the amount of court-ordered restitution (which may be sufficient for one part of the equation), the parties have not mentioned in their briefs the evidence necessary to determine set-off: the amount of money the plaintiff cost Community and the benefits the plaintiff is due under the plan.

(*Id*. at 5.) Based on this holding, the Magistrate Judge recommended that the parties' Motions for Summary Judgment be denied and:

> (1) that principles of equity apply to this case, as well as ordinary set-off law, and (2) that it is necessary and proper to receive evidence, in open court, in order to make factual findings necessary for the court to do equity in this case and determine what benefits, if any, the plaintiff is due under the "top-hat" plan, or, failing that, to apply traditional set-off law.

(*Id*. at 5-6.)

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds:

> (1) the Magistrate Judge's application of *Carson* to the facts of his case;
>
> (2) the Magistrate Judge's holding that Community is entitled to a setoff or that other equitable principles apply; and

>    (3) the Magistrate Judge's holding that there is any basis to deny plaintiff benefits under the Benefit Restoration Plan.

(Doc. 20.)

### III. <u>DISCUSSION</u>

In his Motion for Summary Judgment, plaintiff argues that his claim for benefits under the Benefit Restoration Plan were denied in error based on the October 2003 amendment to the plan adopted after his termination. Defendant does not dispute the Magistrate Judge's finding that the denial of benefits on this basis was error. Therefore, plaintiff's Motion for Summary Judgment is due to be granted in part, and the decision of defendant to deny plaintiff's claimed benefits is due to reversed to the extent defendant relied on the October 2003 amendment. However, the court finds that the issue of whether plaintiff is entitled to benefits should be remanded to the Administrator for reconsideration of plaintiff's claim for benefits without reference to the amendment.

Defendant has moved for summary judgment on the ground that "equitable principles preclude an embezzler from wresting special retirement benefits from the victim of his theft." (Doc. 15 at 9.) The Magistrate Judge adopted this argument in his Report and Recommendation, but reserved for trial the issue of "whether the plaintiff's benefits should be completely or partially forfeited." (Doc. 19 at 5.) Also, the Report and Recommendation also stated that defendant would be entitled to set-off the amount of restitution plaintiff was

6

ordered to pay[3] against the amount of his benefits under the Restoration of Benefits Plan.[4] (*Id*.). However, the Magistrate Judge found that defendant's Motion for Summary Judgment was due to be denied because issues related to forfeiture and set-off remained to be decided.

The Eleventh Circuit Court of Appeals has held, "There is no reason to conclude that ERISA requires the abrogation of the equitable principle that a wrongdoer should not benefit from his misdeeds," and that ERISA benefits could be used "to satisfy liabilities arising from criminal misconduct toward an employer." *St. Paul Fire and Marine Insurance v. Cox*, 752 F.2d 550, 552 (11th Cir. 1985), *abrogated by Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990). The plan at issue in *Cox* was not a top hat plan and, therefore, the non-alienability provision of ERISA applied. *See Cox*, 752 F.2d at 551 (citing 29 U.S.C. § 1056(d)(1)). The *Cox* court held that plaintiff's criminal conduct constituted an exception to the anti-alienability provision. *Id*. at 552. This holding was abrogated by the Supreme Court in *Guidry v. Sheet Metal Workers*, which held that equitable exceptions were not appropriate in light of the plain language of § 1056(d)(1). *Guidry*, 493 U.S. at 376. The Supreme Court's abrogation of the holding in *Cox* is limited to cases in which ERISA's anti-

---

[3]In its Response to Plaintiff's Objection to Magistrate Judge's Report and Recommendation, defendant contends that the amount Plaintiff was ordered to pay as restitution – $1,776,974.24 – is the amount of its set off. (Doc. 22 at 3.) The judgment in the criminal case assessed restitution to Community Bank in the amount of $1,326,974.24, and to Travelers Insurance Company in the amount of $450,000.00. (Doc. 16, Attachment at 6.)

[4]The record contains no evidence of the amount of plaintiff's benefits under the Benefits Restoration Plan.

7

alienability provision, 29 U.S.C. § 1056(d)(1), or the related anti-forfeiture provision, 29 U.S.C. § 1053(a), apply to the plan at issue. Thus, the Eleventh Circuit's holdings – ERISA benefits can be denied based on "the equitable principle that a wrongdoer should not benefit from his misdeeds" and ERISA benefits could be used to satisfy liabilities arising from an employee's criminal activity – remain the law in this Circuit with regard to claims for benefits under top hat plans that are not subject to ERISA's anti-alienability and anti-forfeiture provisions.

To the extent plaintiff objects to the Magistrate Judge applying *Carson v. Local 1588, International Longshoremen's Ass'n*, 769 F. Supp. 141 (S.D.N.Y. 1991), to the facts of this case, such objection will be overruled. The court assumes – because plaintiff has provided no argument to the contrary – that plaintiff's objection to the Magistrate Judge's citation to *Carson* is an objection to the Magistrate Judge's finding that equitable principles may be applied to reduce or eliminate his claim for benefits. To the extent plaintiff contends that equitable principles do not apply and that such principles cannot provide the basis for denial of his claims, such objections are due to be overruled. The court will adopt the Report and Recommendation of the Magistrate Judge as to these issues based on the Eleventh Circuit's decision in *Cox*.

The court, however, rejects the Magistrate Judge's recommendation that it should "receive evidence, in open court, in order to make factual findings necessary for the court to do equity in this case and determine what benefits, if any, the plaintiff is due under the

8

'top-hat' plan, or, failing that, to apply traditional set-off law." (Doc. 19 at 6.) The court finds that the initial determination of plaintiff's entitlement to benefits and the set-off amount, if any, is for the Plan Administrator, not this court. *See Counts v. American General Life and Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).

> ERISA and its regulations contemplate a system in which the administrator makes a decision as to whether to grant or deny benefits based on the factual scenario and based on its interpretation of the relevant plan provisions. The administrator then provides the claimant with notice of the decision, including, among other things, the "specific reason or reasons for the denial" and "[s]pecific reference to pertinent plan provisions on which the denial is based." 29 C.F.R. § 2560.503-1(f). If the administrator denies benefits, the claimant may bring suit under § 1132. The district court will then engage in a deferential review of the administrator's factual determinations, based on the record before the administrator. Next, depending on whether the plan expressly grants the administrator discretion in interpreting its terms, the reviewing court will review the administrator's interpretation of the plan provisions either under a de novo or an abuse of discretion standard. Thus, the end product of a claims review process wherein § 1133 and its regulations have been followed faithfully is a benefits decision that is thoroughly informed by the relevant facts and the terms of the plan and, if benefits are denied, includes an explanation of the denial that is adequate to insure meaningful review of that denial.

*Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 395 (5th Cir. 1998). "[W]hen, as here, the administrator construes a plan provision erroneously, the court should not decide itself whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456 (9th Cir. 1996). The parties' Motions for Summary Judgment, (docs. 11 and 14), are due to be denied to the extent

they ask the court to decide whether plaintiff is entitled to benefits under the Benefits Restoration Plan, and, if so, the amount of such benefits.

Defendant's letter to plaintiff recites the amendment to the Plan and "common law forfeiture" as its reasons for denying his claims; it does not mention defendant's claim that plaintiff's benefits, if any, are subject to a set-off against his debt to Community Bank. (Doc. 13-5 at 2-3.) Because the court finds defendant could not rely upon the amendment to deny plaintiff's claim for benefits, this matter is due to be dismissed and remanded to the Administrator for reconsideration of plaintiff's claim for benefits under the Benefits Restoration Plan without consideration of the October 2003 amendment.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that plaintiff's objections are due to be overruled and the Magistrate Judge's Report and Recommendation is due to be adopted in part and rejected in part. Plaintiff's Motion for Summary Judgment will be granted in part and denied in part; defendant's Motion for Summary Judgment will be denied. This case will be dismissed without prejudice and remanded to the Administrator for determination of plaintiff's claim for benefits without reference to the October 2003 amendment. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this the 7th day of March, 2007.

/s/ Sharon Lovelace Blackburn
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE